IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NESTOR MEDINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-cv-1532-RJD |
| ) | |
| FELICIA ADKINS, *et al*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER**

**DALY, Magistrate Judge[1]:**

Plaintiff Nestor Medina, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Danville Correctional Center, brought this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Lawrence Correctional Center ("Lawrence") and Danville Correctional Center ("Danville"). Plaintiff has been diagnosed with chronic right knee ACL deficiency, which causes Plaintiff's right knee to buckle and Plaintiff to experience stability issues. (Docs. 1 & 7). Plaintiff alleges that during his incarceration, both at Lawrence and at Danville, he suffered several falls, resulting in injuries, including a serious injury of his left shoulder for which Plaintiff received reconstructive surgery. Plaintiff complains regarding repeated delays and denial of medical care for his knee and the resulting associated injuries over the period of several years. (Docs. 1; 7).

Upon threshold review of the Complaint, Plaintiff was allowed to proceed on the following claims:

---

[1] This case has been assigned to the undersigned to conduct all proceedings, including trial and final entry of judgment upon the parties' full consent pursuant to 28 U.S.C. Sec. 636(c) and Federal Rule of Civil Procedure 73. (Doc. 79).

| | | |
|---|---|---|
| **Count 1:** | | Eighth Amendment claim against Pittman, Shah, Wise, Luking, Thomann, Cunningham, Adkins, Ek, Chacon, Lahey, Mary, and Darnell for failing to provide Plaintiff constitutionally adequate care for his right knee condition.[2] |
| **Count 2:** | | Eighth Amendment claim against Wise, Luking, Cunningham, and Ek for failing to provide Plaintiff constitutionally adequate care for his left shoulder. |
| **Count 3:** | | ADA/RA claim against Defendant Hughes in her official capacity for failing to provide Plaintiff with a prescribed disability device. |
| **Count 4:** | | First Amendment claim against Thomann for retaliating against Plaintiff by confiscating his cane. |
| **Count 5:** | | First Amendment against Dr. Ek for retaliating against Plaintiff by refusing to provide further evaluation and/or treatment for potential nerve and spine issues. |

(Doc. 7).

Pending before the Court are the following motions: Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2); Defendant Shah's motion to Dismiss (Doc. 61); Defendant Pittman's Motion to Dismiss (Doc. 74); and Plaintiff's Motion for Reconsideration of Order Denying Motion for Recruitment of Counsel (Doc. 84). For the reasons set forth below, all motions are denied.

**Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2)**

Contemporaneously with the complaint, Plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. 2). Plaintiff's motion relates to treatment that Plaintiff has allegedly been denied since his transfer to Danville in April 2023 regarding his right

---

[2] Defendants have appeared and provided the Court with their full and correct names. (Docs. 21, 23, 31, 39, 52, & 76). The Clerk is DIRECTED to update the docket to reflect Defendants' full and correct name as follows: Mary Rothwell, N.P. for Ms. Mary; Dr. Jonathan Ek for Dr. J Ek; Emily Thomann for Thomann; Lori Cunningham for Ms. Cunningham; Jennifer Chacon for Jennifer A Chacon; Vipin Shah, M.D., for Dr. Vipin K. Shah; Melissa Wise, N.P. for M. Wise; Carissa Luking, N.P. for Luking; and Lynn Pittman, D.O. for Dr. Pittman.

knee ACL deficiency. (Doc. 2). Specifically at issue is an ACL brace that Dr. Kahn, an outside orthopedic surgeon, provided to Plaintiff on April 1, 2024, and which Danville officials confiscated upon Plaintiff's return to the facility later that day due to security concerns. Plaintiff asks the Court to order Defendants to return to him the confiscated ACL brace and to implement the treatment plan for his knee as recommended by the orthopedic specialist. (Doc. 2, p. 10). Alternatively, he asks to be transferred to a facility that can accommodate his disability and provide him with an appropriate ACL brace.

In its threshold review of the Complaint, the Court reviewed Plaintiff's Motion for a temporary restraining order and denied it on the basis that Plaintiff had been receiving some treatment and had not demonstrated that "irreparable injury, loss, or damage will result…before the adverse party can be heard in opposition." (Doc. 7 at 18). However, the Court left the motion pending regarding Plaintiff's request for preliminary injunction and ordered Defendants to file a response to the same.

Defendants Darnell, Dr. Ek, Rothwell, and Thomann (the "Wexford Defendants") filed their response to Plaintiff's motion on August 7, 2024. (Doc. 46). Defendant Darnell is the Danville Director of Nursing. Defendant Ek is the Danville Medical Director. Defendant Rothwell is a nurse practitioner at Danville. (Doc. 59, p.2). Defendant Thomann is a physical therapist at Lawrence Correctional Center. (Doc. 55, p.2); Defendants set forth various reasons why a preliminary injunction should not issue. First, Defendants argue that Plaintiff cannot succeed on the merits of his Eight Amendment Claim of deliberate indifference, citing Plaintiff's long history of medical appointments and treatment for his knee condition, including evaluation by four different orthopedic surgeons since the fall of 2021. Turning to the requested relief, the

Page **3** of **20**

Wexford Defendants argue that the prison transfer is beyond their ability to facilitate. They further argue that Plaintiff has failed to show irreparable harm. They also assert that the ACL brace cannot be approved under the facility's safety protocols and procedures because its metal pieces impose a security risk, and Plaintiff has failed to show that it is medically necessary.

Defendants Adkins, Chacon, Cunningham, Lahey, and Hughes, in their official capacity (the "IDOC Defendants"), also filed their response. (Doc. 47). Defendant Adkins is the Danville Warden. (Doc. 7, p. 15). Defendant Chacon is the former Danville Health Care Administrator. (Doc. 47, p. 7). Defendant Cunningham is the Health Care Unit Administrator at Lawrence. (Doc. 7, p. 16). Defendant Lahey is the ADA coordinator at Danville. (Doc. 47, p. 7). Defendant Hughes is the IDOC Director. (Doc. 47, p. 7). The IDOC Defendants raise substantially the same bases for the denial of the preliminary injunction as the Wexford Defendants. In addition, they argue that Plaintiff has failed to show a likelihood to succeed on his ADA/RA claim (which is only asserted against Defendant Hughes) because he has not asserted a denial or exclusion from participation in any benefits, services, programs, or activities at Danville. Finally, Defendants assert Plaintiff's request for transfer from Danville to a different IDOC facility where the use of the ACL brace is approved is an extreme remedy that exceeds the Court's authority under the PLRA's public interest mandate in evaluating preliminary injunctions.

Plaintiff filed replies as well as a written statement in lieu of oral argument.[3] (Docs. 63, 64, 85). A hearing on the motion was held before the undersigned on November 18, 2024. (Doc.

---

[3] Plaintiff further filed a Motion to Subpoena Witnesses (Doc. 83) asking that the hearing be continued to allow sufficient time to subpoena Dr. Ek., Dr. Kahn, and Lieutenant Simmons. The Court declined to continue the hearing and withheld ruling on the request to subpoena witnesses. At the hearing on the motion for preliminary injunction, Plaintiff withdrew his Motion to Subpoena Witnesses. (Doc. 87).

87).

Based on the evidence in the record and testimony at the hearing, it appears the parties generally agree on the following facts concerning Plaintiff's treatment for his right knee ACL deficiency. Plaintiff was seen by Dr. Robert A. Gurtler, an orthopedic specialist at the Carle Clinic in Champaign, Illinois, on September 27, 2021. (Doc. 46-1, pp. 1-3). Dr. Gurtler took a history and performed a physical examination. In his record, Dr. Gurtler mentioned the possibility of performing surgery. Plaintiff was sent back to the Carle Clinic on November 16, 2021, for a surgical evaluation. (*Id.* at 4). Although Plaintiff was sent back to the same facility, Plaintiff was seen by Dr. Jarrad Zimmerman, another orthopedic surgeon affiliated with the Carle Clinic. At the conclusion of his assessment, Dr. Zimmerman recommended an MRI. The MRI was performed on December 29, 2021. (*Id.* at 6). On January 12, 2022, Dr. Zimmerman, presumably having reviewed the MRI, sent a letter to Plaintiff. (*Id.* at 8). Dr. Zimmerman noted, "he is not a surgical reconstruction candidate while incarcerated as he will have to be in a large brace and crutches for weeks after the surgical intervention. He could use a simple knee sleeve if that is available for added stability." (*Id.*)

Thereafter, Plaintiff was sent to a third orthopedic surgeon, Dr. John Davis, this time at the Orthopedic Institute of Southern Illinois. (Doc. 46-1, p. 10). Dr. Davis likewise did not believe Plaintiff to be a surgical candidate and recommended physical therapy and an ACL brace. Dr. Davis further noted: "I do not think he is a good surgical candidate, given his arthritis in the knee, for ACL reconstruction." (*Id.* at 12). On April 20, 2023, Plaintiff was transferred from Lawrence Correctional Center to the Danville Correctional Center. Another MRI was performed on August 8, 2023. (*Id.* at 14). On April 1, 2024, Plaintiff was seen by another Carle Clinic

orthopedist, Dr. Adam Kahn. (*Id.* at 15). Dr. Kahn provided Plaintiff with a "DonJay Playmaker II ACL Brace," which is a knee brace containing metal hinges. (*Id.* at 16-18). When Plaintiff returned to Danville later that day, the hinged knee brace was confiscated because the metal pieces within it were deemed to pose a serious security risk in that they could be removed and used to form a weapon. Plaintiff was seen by Dr. Kahn again on July 1, 2024. Dr. Kahn mentioned surgery in his notes but made no definitive recommendation for it. Dr. Khan actually explained some reservations about the potential success of the surgery due to Plaintiff's age and chronic nature of the injury. Dr. Kahn noted within his July 1, 2024, office record that Plaintiff's latest injury occurred while at a soccer game. Defendants construed this to mean that Plaintiff was playing soccer. Plaintiff argued, however, that he was a spectator at a soccer game and his knee gave out when the ball came in his direction, and he attempted to kick it back into play.

**Plaintiff's testimony**

At the hearing on Plaintiff's motion for preliminary injunction, Plaintiff testified that he saw Dr. Kahn again on August 26, 2024, who opined that Plaintiff was not a good candidate for surgery due to his age and that he would need to reevaluate Plaintiff's suitability for surgery after a three-month bracing trial. Plaintiff further conveyed that Dr. Kahn believed Plaintiff would likely need to use the brace even after knee surgery. Plaintiff further testified that four days after visiting Dr. Kahn, the Danville Operation Security Office advised Plaintiff that the metal brace had been approved, but Plaintiff would likely have to be confined to health care to use it. Plaintiff reached out to health care, but a week later, he was provided with another "nylon sleeve" instead of a hinged brace. Plaintiff filed a grievance but did not receive any response. He testified that the provided nylon sleeve has Velcro strips across the knee but does not provide sufficient support

Page **6** of **20**

even when Plaintiff pulls the strips tight. He feels like he is "walking on ice," trying to keep his balance, which has also affected his hip. He testified that the first day he tried the nylon sleeve, he fell and injured his hand. Plaintiff further stated that another medical provider had advised him in the past that the nylon sleeves were only for comfort and did not provide support unless they were reinforced with metal, wood, or plastic. He stated that he used to have a cane for stability at Lawrence, but it was confiscated when he was transferred to Danville.

**Warden Adkins' testimony**

At the hearing on Plaintiff's motion for preliminary injunction, Warden Adkins testified that the metal brace would not be allowed in the general population due to security concerns. Based on the facility's policy, if a metal device is medically necessary, the inmate will need to be confined in the infirmary for as long as he needs to utilize the device. Whether a medically necessary device poses a security concern is determined at the facility level, and different facilities may reach different conclusions as to the same device. Regarding other metal devices, such as canes and walkers, that are allowed in the general population, Warden Adkins explained that they do not pose the same security concerns due to the grade and thickness of the metal. She further testified that contrary to Plaintiff's contention, the facility did not approve the hinged metal brace but rather an alternative brace that did not contain metal pieces and did not pose a security risk. Regarding Plaintiff's request for transfer to a facility that approves the use of the hinged metal brace in the general population, Warden Adkins testified that a transfer to a different facility needs to be approved first at the facility level and then by the Transfer Coordinator's Office in Springfield. At the facility level, the counselor puts the transfer request in, which then needs to be approved by the supervisor and the security specialist before it is signed by the Warden and

then sent to Springfield. Warden Adkins did not recall either authorizing or denying a request for transfer for Plaintiff, but she also clarified that she had no recollection of ever denying a transfer request that had reached her office.

**Dr. Ek's testimony**

Dr. Ek testified regarding Plaintiff's treatment for his right knee ACL deficiency after his transfer to Danville and the efforts that have been made to provide Plaintiff with an appropriate alternative to the hinged metal brace. Dr. Ek testified that on April 1, 2024, when Plaintiff returned to the facility with the hinged metal brace provided by Dr. Kahn, the brace was confiscated due to security reasons. The metal pieces of the brace were thereafter removed, and the brace was returned to Plaintiff, but Plaintiff refused to use it without the metal pieces. According to Dr. Ek, Plaintiff's latest appointment with Dr. Kahn was on August 26, 2024, at which time Dr. Kahn again recommended a trial of a certain type of knee brace to determine whether Plaintiff's stability would improve. Dr. Ek testified he did not believe Plaintiff explained the security issue with the hinged brace to Dr. Kahn. Thereafter, in September 2024, a Danville nurse practitioner contacted Dr. Kahn's office to advise that the hinged brace was not allowed for security reasons and to inquire about alternative devices. Dr. Kahn's office responded that a neoprene sleeve would be an appropriate alternative. Accordingly, Plaintiff was provided with a nonmetal ACL stabilization brace that has four additional straps to provide more support compared to a typical neoprene sleeve. Dr. Ek further clarified that the health care unit confirmed with the Danville Assistant Warden of Operations that the hinged brace had not been approved at the facility. Dr. Ek testified that during Plaintiff's 18-month presence at Danville, Plaintiff has received more extensive care than the typical individual in custody, including seeing a medical

provider 25 times, having shoulder surgery, and receiving 17 sessions of physical therapy. Dr. Ek testified that Plaintiff has been visiting the health care unit on a daily basis, and Dr. Ek has never observed any issue with Plaintiff's ambulation. Dr. Ek further suggested that a cane or a walker, which are devices approved at the facility, could be provided to Plaintiff to accommodate his stability issues.

On cross-examination, Dr. Ek clarified that he is not a specialist in orthopedics. While Dr. Ek had examined Plaintiff six times since his transfer to Danville, he never physically examined his knee. Dr. Ek explained that he relied on his review of Plaintiff's knee MRI and on Dr. Kahn's diagnosis. He further testified that he was unaware of whether Dr. Kahn would be able to determine Plaintiff's suitability for surgery following the trial with the nonmetal ACL stabilization brace.

## Discussion

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of

winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). If Plaintiff meets his burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

Plaintiff seeks a preliminary injunction directing Defendants to obtain a hinged knee brace and follow Dr. Kahn's treatment plan for his right knee ACL deficiency. Although the Court is sympathetic to the issues Plaintiff is facing due to his knee condition, the undersigned finds that Plaintiff has failed to meet his threshold burden for a preliminary injunction. First, it is not clear that Plaintiff will suffer imminent, irreparable harm absent the requested injunctive relief. Plaintiff argues that without the hinged knee brace, he will continue to suffer from pain and will risk further falls and injuries due to his instability. He further claims that, due to the denial of the hinged knee brace, his left knee is overcompensating, causing the ACL deficiency in his left knee to worsen. He cites Dr. Kahn's medical record to argue that his hips may also be affected if he does not receive the hinged knee brace. However, according to Dr. Ek's testimony, Plaintiff has been provided with a new neoprene knee brace, which uses elastic bands instead of metal pieces to ensure stability. Dr. Ek testified that the neoprene brace was provided as a proper alternative after consultation with Dr. Kahn. At this stage, Plaintiff has failed to provide sufficient evidence to show that the provided neoprene brace is not a medically appropriate alternative to the hinged

metal brace. Moreover, Dr. Ek stated at the hearing that if Plaintiff continues to have stability concerns, he could be provided with a cane in addition to the neoprene brace, which is a less intrusive means to correct Plaintiff's risk of imminent harm.

Plaintiff also complains that absent a proper bracing period, Dr. Kahn would not be able to opine as to the medical necessity of knee surgery or that he could be forced into a surgery that is not medically necessary. It is true that according to Dr. Kahn's medical record, a three-month bracing period was recommended prior to re-evaluating Plaintiff for surgery. However, according to Dr. Ek's testimony, Dr. Kahn approved the provided neoprene brace as a proper alternative to the metal-hinged brace. Less than three months have passed since Plaintiff was provided with the neoprene brace. Following a three-month trial of the neoprene brace Plaintiff may seek another appointment with Dr. Kahn for further evaluation. However, at this time, the record does not support a finding that without the metal-hinged brace, Plaintiff will suffer irreparable harm. For the same reasons, Plaintiff has not shown that if he is not transferred to a facility that approves the use of the metal-hinged ACL brace, he will suffer irreparable harm.

Further, based on the evidence now before the Court, Plaintiff has not established that he is likely to succeed on the merits of his deliberate indifference claim at this time.[4] In Count 1, Plaintiff states a claim for deliberate indifference to serious medical needs against Defendants Pittman, Shah, Wise, Luking, Thomann, Cunningham, Adkins, Ek, Chacon, Lahey, Mary, and Darnell for failing to provide Plaintiff constitutionally adequate care for his right knee condition. To prevail on his claim, Plaintiff must show that his medical condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind."

---

[4] Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.

*Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). Also, nonmedical personnel are entitled to defer to the judgment of health professionals so long as they do not ignore the prisoner. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). In this case, it appears that Plaintiff's right knee ACL deficiency could be deemed a serious medical condition. However, the evidence in this case does not support a finding that Defendants have acted with a sufficiently culpable state of mind—namely, deliberate indifference.

"The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653. Put another way, the plaintiff must demonstrate that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually drew that inference. *Greeno*, 414 F.3d at 653. "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843). Further, the Eighth Amendment does not require that prisoners receive "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care"). The Seventh Circuit has recognized that "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Moreover, the Seventh Circuit recognizes that treatment decisions that necessarily require medical judgment, such as

whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview.  *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation and quotation omitted).

The evidence before the Court establishes that, since his transfer to the facility in April 2023, staff at Danville have made consistent efforts to ensure Plaintiff receives treatment for his right knee ACL deficiency and the resulting instability.  As set forth above, Plaintiff had an MRI on August 8, 2023.  Thereafter, he saw Dr. Kahn, an orthopedic surgeon, in April, July, and August of 2024, with all visits relating to Plaintiff's knee condition.  While the metal-hinged brace provided by Dr. Kahn was confiscated at the facility for security reasons, the facility's health care unit returned the brace to Plaintiff after removing the metal pieces.  Plaintiff, however, refused to use the altered brace.  Importantly, even after Plaintiff's refusal to try the altered brace, Danville Health Care consulted with Dr. Kahn to provide Plaintiff with a medically appropriate alternative to the metal-hinged knee brace.  The neoprene brace with the elastic bands was provided to Plaintiff soon thereafter.  Additionally, Dr. Ek suggested that if Plaintiff continues to experience stability issues, he could be provided with a cane, which Plaintiff had previously utilized while at Lawrence.  Although Plaintiff is understandably frustrated with the issues he has met in obtaining a knee brace, it appears that action has been taken by staff at Danville to attempt to find other avenues in order to accommodate Plaintiff's medical needs while avoiding the security risk of the metal brace.  Accordingly, the evidence does not support a finding at this time that Defendants have disregarded a substantial risk to his health.

For the reasons set forth above, and without expressing any opinion as to the ultimate outcome of Plaintiff's claims, the Court finds Plaintiff has failed to meet his threshold burden in demonstrating entitlement to a preliminary injunction.

**Defendant Shah's and Pittman's Motions to Dismiss (Doc. 61 & Doc. 74)**

Defendant Shah filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), as well as a memorandum in support thereof, arguing that Plaintiff's claims against him are barred under the applicable statute of limitations. (Docs. 61 & 62). Plaintiff responded in opposition, arguing that dismissal is inappropriate under the "continuing care" exception to the statute of limitations. (Doc. 67). Defendant Shah replied that dismissal is warranted because Plaintiff has not pleaded allegations sufficient to trigger the continuing care exception and that the exception could not possibly apply in this case because his Wexford employment terminated in July 2021. (Doc. 73).

Thereafter, Defendant Pittman filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), as well as a memorandum in support thereof, arguing that Plaintiff's claims against her are also barred under the applicable statute of limitations. (Docs. 74 & 75). In anticipation of Plaintiff's response, Defendant Pittman asserted that her employment with Wexford was terminated in July 2020 and could not have rendered any care to Mr. Medina after that point. Plaintiff did not respond to the motion.

*Standard of Review*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. PRO 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted). Dismissal is warranted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for

relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). A motion to dismiss on the basis of a statute of limitations defense may be appropriate only if there is a clear time bar. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). The Seventh Circuit has found that the statute of limitations issue can be properly resolved at the motion-to-dismiss stage as long as the Court does not need to look beyond "the allegations in the complaint and a few undisputable facts within its judicial-notice power." *Id.* Judicial notice is appropriate as to facts "not subject to reasonable dispute" and which are "either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Id.* (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir.1997)).

*Applicable Statute of Limitations*

Although Section 1983 does not contain an express statute of limitations, it is well established in this Circuit that the limitations and tolling laws in the state where the alleged injury occurred are applied. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Illinois law prescribes that actions for personal injury must be commenced within two years after the cause of action accrued; thus, this case is governed by a two-year statute of limitations period. 735 ILCS § 5/13-202; *see Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citations omitted). Accrual of a cause of action, however, is governed by federal law. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517–18 (7th Cir. 2019) (citation omitted). This Circuit has recognized that when a section 1983 Eighth Amendment claim based on deliberate indifference in the delivery of medical care describes "an ongoing denial of care," the continuing harm or continuing violation doctrine applies. *Id*. (citing *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir.

2001)). In those cases, the Court deems that the "alleged wrong—the refusal to provide medical care—continued for as long as the defendants had the power to do something about [the plaintiff's] condition." *Id*. (citation, internal quotation marks, and emphasis omitted). But even under the continuing violation doctrine, the involvement of a defendant in the continuing wrongdoing is over when that defendant's employment with the institution is terminated. *Id.* "The date of the defendant's departure thus marks the last possible time when the claim might have accrued" as to that defendant. *Id.*

Here, the Complaint was filed on June 20, 2024. Dr. Shah argues that Plaintiff's Eighth Amendment deliberate indifference claim for failing to provide adequate care for his right knee is time-barred because the only allegations against him are for conduct in September and October of 2020. Likewise, Dr. Pittman alleges that the only allegations against her relate to treatment provided to Plaintiff between July 2019 and July 2020. Defendants further argue that Plaintiff did not plead the continuing care exception because the Complaint does not state that Plaintiff continued to receive treatment by the specific Defendants after those dates. The Court disagrees.

Based on the allegations of the Complaint, Dr. Shah and Dr. Pittman were institutional health providers who treated Plaintiff for his knee condition while Plaintiff was incarcerated at Lawrence. (Doc. 1, p.7). Regarding Dr. Pittman, the Complaint alleges that on July 26, 2019, while incarcerated at Lawrence, he had a medical appointment with Dr. Pittman because his right knee was "giving out," and he was falling. (Doc. 1, p. 5). Dr. Pittman informed Plaintiff that he has ACL/MCL deficient knees and prescribed Plaintiff a knee sleeve for stability. (*Id.*). Following the appointment, Plaintiff's right knee continued to worsen. (Doc. 1, p. 6). Plaintiff's knee would "give way," causing him to fall and hurt himself. He was issued a low bunk permit

because he was having difficulty climbing down from his top bunk bed. Plaintiff had another appointment with Dr. Pittman on October 10, 2019. Dr. Pittman instructed Plaintiff to continue wearing the knee sleeve and exercise.

As to Dr. Shah, the Complaint alleges that Plaintiff was seen by Dr. Shah in September 2020 for knee pain. (Doc. 1, p. 7). Plaintiff requested to see an orthopedic doctor because his condition was worsening, but Dr. Shah told Plaintiff that he would receive more knee sleeves for stabilization and that Plaintiff would have to learn to live with the pain and falling because Dr. Shah was not going to do anything else for him. (*Id.*). Plaintiff alleges in the Complaint that he remained at Lawrence through April of 2023 and that by the time of his transfer, he had still not received appropriate treatment for his knee condition and resulting instability despite his repeated visits to the health care unit. Considering this Court's liberal pleading standards, the Complaint contains sufficient allegations to reasonably infer that Dr. Shah and Pittman, as medical providers in Lawrence, continued to deny Plaintiff's medical care until Plaintiff's transfer to Danville in April of 2023.

Dr. Shah and Pittman further argue that dismissal is warranted even under the continuing violation doctrine because their employment with the institution was terminated by July 2021 and July 2020, respectively. However, at this stage, the Court may only look at the allegations in the Complaint and facts within the Court's judicial notice power. While Defendants' alleged dates of termination of employment with the institution may result in their dismissal from this case in a motion for summary judgment after discovery has been conducted on the merits, they are neither part of the Complaint nor facts within the Court's judicial notice power. Accordingly, the Court does not have the authority to consider them in the context of the pending motions to dismiss.

Because the Complaint contains sufficient allegations to reasonably infer that Dr. Shah and Pittman continued to be deliberately indifferent to Plaintiff's knee condition until April 2023, Plaintiff's deliberate indifference claim did not arise until that time. Since the Complaint was filed on June 20, 2024, less than two years from the accrual of the cause of action, Plaintiff's claims against Dr. Shah and Pittman are not time-barred.

For these reasons, Defendant Shah's Motion to Dismiss (Doc. 61) and Defendant Pittman's Motion to Dismiss (Doc. 74) are **DENIED**.

**Motion for Reconsideration of Order Denying Motion for Recruitment of Counsel (Doc. 84)**

Plaintiff filed a motion asking that the Court reconsider its prior denial of Plaintiff's motion for recruitment of counsel. (Doc. 84). The Court has previously denied Plaintiff's motion for recruitment of counsel (Doc. 4) because Plaintiff's filings demonstrated his ability to adequately litigate this case *pro se* at that early stage. (Doc. 7). The Court construes Plaintiff's motion as a renewed motion for recruitment of counsel.

While there is no constitutional or statutory right to counsel for a civil litigant, under Section 1915(e), a district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Stroe v. Immigration and Naturalization Services*, 256 F.3d 498, 500 (7th Cir. 2001); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). When presented with a request to appoint counsel, a court must make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

First, Plaintiff's motion does not provide any evidence of Plaintiff's attempts to obtain

counsel on his own. However, Plaintiff's original motion for recruitment of counsel contained copies of letters from several firms declining to take his case. (Docs. 4, pp. 3-15). Accordingly, the Court deems the threshold requirement for recruitment of counsel to have been satisfied.

Turning to the second prong of the test, the Court finds that Plaintiff is not entitled to recruitment of counsel at this early stage. Plaintiff states that he should be appointed counsel because he lacks the legal knowledge and experience to adequately litigate this case. He states that his prior filings were submitted with the assistance of another inmate who has since been transferred to a different facility and that he has limited access to the law library. However, these circumstances are not unique to Plaintiff and do not warrant recruitment of counsel. Further, Plaintiff states in his motion that a Prisoner at Law ("PAL") arrived at Danville and has agreed to assist Plaintiff in ligating this matter. Even more, at the hearing on the Motion for Preliminary injunction, Plaintiff demonstrated his ability to properly cross-examine witnesses, including medical professionals, and set forth legal arguments in a coherent and effective way. Plaintiff argues that recruitment of counsel is also necessary due to the necessity of expert testimony, which Plaintiff is unable to obtain. However, at this early stage, litigation will be limited to the exchange of initial disclosures to resolve the issue of exhaustion of administrative remedies. While the Court acknowledges Plaintiff's challenges as a *pro se* litigant, it is confident that Plaintiff can adequately litigate this case at this early stage. Accordingly, Plaintiff's motion for reconsideration of the denial of recruitment of counsel (Doc. 84) is **DENIED.** Plaintiff, however, may renew his motion should there be a change of circumstances in the future.

**Conclusion**

Based on the foregoing, Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2), Defendant Shah's motion to Dismiss (Doc. 61), Defendant Pittman's Motion to Dismiss (Doc. 74), and Plaintiff's Motion for Reconsideration of Order Denying Motion for Recruitment of Counsel (Doc. 84) are **DENIED**.

**IT IS SO ORDERED**.

**DATED: November 26, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**